[Crim. No. 363.    Third Appellate District.—August 1, 1916.]

## In the Matter of the Application of YEE KIM MAH, for a Writ of Habeas Corpus.

CITY OF SACRAMENTO — MISDEMEANORS COMMITTED WITHIN CORPORATE LIMITS—JURISDICTION.—The several justices' courts of the county of Sacramento have jurisdiction over all misdemeanors enumerated by the general laws of the state committed within the municipal limits of the city of Sacramento, as well as those committed outside of such limits and within the territorial boundaries of the county of Sacramento.

ID.—JURISDICTION OF MISDEMEANORS—WHITNEY ACT—EFFECT OF CODE AMENDMENT—REPEAL OF ACT AS TO SACRAMENTO.—The provisions of the "Whitney Act" (Stats. 1885, p. 213), giving to police courts of cities having a population of over thirty thousand and under one hundred thousand inhabitants exclusive jurisdiction of all misdemeanors punishable by fine or imprisonment, or both by such fine and imprisonment, committed within the limits of such cities, if ever applicable at any time to the city of Sacramento, have been, so far as such city is concerned, repealed or superseded by the enactment of section 1425 of the Penal Code, in the year 1905 (Stats. 1905, p. 705), which provides, among other things, that justices' courts shall have jurisdiction of all misdemeanors committed within their respective counties punishable by fine not exceeding five hundred dollars, or imprisonment not exceeding six months, or by both such fine and imprisonment.

ID.—JURISDICTION OF POLICE COURT OF SACRAMENTO—EFFECT OF CHARTER.—The provisions of sections 162 and 164 of the freeholders' charter of the city of Sacramento, approved in 1911 (Stats. Ex. Sess. 1911, p. 305), establishing a police court in such city and giving it jurisdiction "of all misdemeanors enumerated by the general laws or by ordinances of the city and of all other crimes cognizable by justices' courts and courts of justices of the peace and police courts under the constitution and laws of the state of California," do not confer upon the police court so established *exclusive* jurisdiction of all simple misdemeanors committed under the general laws of the state within the limits of such city, but give it concurrent jurisdiction with the justices' courts of the county of Sacramento.

APPLICATION for a Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

John Q. Brown, for Petitioner.

Lee Gebhart, Hugh B. Bradford, and S. J. Otis, for Respondent.

HART, J.—In the justice's court of Riverside township, in the county of Sacramento, the petitioner was charged with and convicted of a misdemeanor growing out of the violation by him of the legislative act entitled "An act to regulate the sale of poisons," etc., and, claiming that the judgment of conviction is void because the court before which he was tried was without jurisdiction to try the action against him, he seeks his release from the custody of the sheriff of Sacramento County, by whom he is now being detained by authority of the said judgment of conviction and sentence thereupon imposed upon him, through the writ of *habeas corpus.*

In the outset it may be observed that, although the act of the violation of certain of whose provisions the petitioner was adjudged guilty prescribes penalties for the first and second convictions thereunder which are within the jurisdiction of justices' or police courts to impose, yet, for a third conviction of the same person for the violation of the provisions thereof, the punishment prescribed is by imprisonment in the state prison for not less than one year and not more than five years. It hence follows that, where a person is charged with the violation of the provisions of said act, together with two previous convictions thereunder, jurisdiction to try the person so offending is in the superior court. (*People* v. *Sacramento Butchers' Protective Assn.,* 12 Cal. App. 471, 478, [107 Pac. 712].) It is, however, conceded by the petitioner that the conviction of which he here complains was of what is popularly termed a simple or "high-grade" misdemeanor of which justices' and police courts have jurisdiction, and this concession necessarily carries with it the further concession that he was not charged with and convicted of a violation of the provisions of the statute with two prior convictions thereunder.

The point made by the petitioner, however, results from the following facts: That, as the petition shows and the demurrer interposed thereto by the respondent admits, the crime of which he was convicted was committed within the limits of the city and the judicial township of Sacramento, said

township being coextensive, territorially, with the municipal limits of said city; that Riverside township, in the county of Sacramento, in which the petitioner was charged with, tried for, and convicted of the offense for which he is now being restrained of his liberty, is not embraced within or a part of the city of Sacramento. In other words, and in brief, the petition shows that the crime of which the petitioner stands convicted was committed within the municipal limits of the city of Sacramento, and that he was charged, prosecuted, and convicted in a judicial township territorially independent of and distinct from the said city and township. It is the contention that under the terms of the so-called Whitney Act (Stats. 1885, p. 213), the police court of the city of Sacramento has sole and exclusive jurisdiction of all misdemeanors punishable by fine or imprisonment, or by both such fine and imprisonment, committed within the limits of said city, and that, therefore, a justice's court whose township or territorial jurisdiction is outside or not embraced within the limits of said city cannot legally acquire or exercise jurisdiction of misdemeanors so committed. It follows, so the argument goes, that the conviction of the petitioner in the justice's court of Riverside township is *coram non judice* and void.

The "Whitney Act," section 1, provides: "The judicial power of every city having thirty thousand and under one hundred thousand inhabitants, shall be vested in a police court to be held therein by the city justices, or one of them, to be designated by the mayor, but either of said justices may hold such court without such designation, and it is hereby made the duty of said city justices, in addition to the duties now required of them by law, to hold said police courts.

"Sec. 2. The police courts shall have exclusive jurisdiction of the following public offenses committed in the city: First, petit larceny; Second, assault or battery, not charged to have been committed upon a public officer in the discharge of official duty, or with intent to kill; Third, breaches of the peace, riots, affrays, committing willful injury to property, *and all misdemeanors punishable by fine or imprisonment, or by both such fine and imprisonment;* Fourth, of proceedings respecting vagrants, lewd, or disorderly persons."

The third section invests said court with "exclusive jurisdiction of all proceedings for a violation of any ordinance of said city, both civil and criminal, and of an action for the

collection of any license required by any ordinance of said city." Said court is also authorized by said act to hear and conduct the preliminary examination of charges of which the superior court has jurisdiction, and to commit the offenders to trial in said last-mentioned court.

The argument advanced in support of the position that from the foregoing provisions of the "Whitney Act" the city of Sacramento, as a municipal corporation, derives all the judicial power with which it is invested, is, so it is asserted and contended, that the census of the year 1910 disclosed that said city had acquired a population of over thirty thousand inhabitants, but still contained less than one hundred thousand inhabitants, and that said city, therefore, after the said census was taken and upon the official declaration thereof, was automatically shifted into a class which brought it within the scope of the "Whitney Act" with respect to its judicial power; that said city is still a city having a population of over thirty thousand and under one hundred thousand inhabitants, and still subject to the provisions of the "Whitney Act" regulating the power and jurisdiction of the police courts in cities of that class.

Varying legislation respecting justices' and police courts, their power and jurisdiction, has, from time to time, been enacted since the adoption of the codes in 1872; but, in deciding the question submitted in this proceeding, it is not necessary to review said legislation or enter into a detailed examination of the changes and amendments so made in the law with respect to those courts. It is sufficient if we find, as we think we have correctly found, that the provisions of the "Whitney Act," even if at any time they were applicable to the city of Sacramento, have been, in so far as they affected the question of the jurisdiction of the police court of said city, superseded by legislation enacted subsequently to the passage of said act.

The legislature of 1905 (Stats. 1905, p. 705) added a new section to the Penal Code, numbered 1425, which is now a part of said code, and which prescribes and regulates the jurisdiction of justices' courts in criminal cases. It is by said section provided, among other things, that said courts shall have jurisdiction of "all misdemeanors punishable by fine not exceeding five hundred dollars, or imprisonment not exceeding six months, or by both such fine and imprisonment," committed

within their respective counties. That section, or the precise provisions thereof, were embraced within section 115 of the Code of Civil Procedure (see Deering's Pocket Edition, Code Civ. Proc., of year 1906); but the legislature, doubtless viewing the subject matter of said section as coming strictly and hence more appropriately within the purview, nature, and purpose of the Penal Code, adopted said section into and as a part of the latter code in the year 1905, as stated. In 1907, the legislature, at its regular session, in furtherance of its manifest object of making the provisions of the section a part of the criminal law system of our state, repealed section 115 of the Code of Civil Procedure. (Stats. 1907, p. 682.)

While it is true, as seen, that the provisions of section 1425 of the Penal Code were, as section 115 of the Code of Civil Procedure, a part of the law of the state and no doubt governed in the matter of the jurisdiction of justices' courts (unless they were or had been superseded by some subsequent enactment) prior to and at the time said section 1425 of the Penal Code was enacted, it is also obviously true that the enactment of said last-mentioned section constituted and involved an act of new and independent legislation, or an act no different, in a legal sense, from any other legislative act involving legislation upon a subject upon which there had theretofore been no legislation by the legislature. The legislature, in other words, in enacting section 1425, put an entirely new section into the Penal Code, notwithstanding that the identical section had been and then was the law of the state expressed in the form of a section of another of the four codes. And in so enacting said section, the legislature gave vent to its latest utterance or expression upon the subject to which the section relates. The effect of the enactment of the section was, therefore, to repeal at least so much of the provisions of the "Whitney Act" as pretended or purported to vest in the police court of the city of Sacramento "exclusive jurisdiction of . . . all misdemeanors punishable by fine or imprisonment, or by both such fine and imprisonment," committed in said city, assuming only for the purposes of this case that by the provisions of the Whitney Act the power and jurisdiction of the police court of said city had theretofore been governed and regulated. This is only to say that section 1425 of the Penal Code is now the law which is controlling in the matter of the jurisdiction of justices' courts, and that, unless that sec-

tion runs counter to some subsequent legislation upon the subject, those courts have jurisdiction of any of the offenses therein enumerated committed anywhere within their respective counties. It follows, of course, subject, however, to the qualification that so much of section 1425 as confers such jurisdiction has not, since its enactment, been repealed either expressly or by necessary implication, that it was within the lawful jurisdiction of the justice's court of Riverside township to try the petitioner for the misdemeanor charged to have been committed by him within the limits of the city of Sacramento, said township being, as seen, as is the city of Sacramento, within the county of Sacramento.

The only legislation to which our attention has been directed or which we have in mind purporting to prescribe the powers and jurisdiction of the police court of the city of Sacramento, and which has been had since the enactment of section 1425 of the Penal Code, is to be found among the provisions of the freeholders' charter of the city of Sacramento, approved by the legislature at its extra session in the year 1911. (Stats. & Amdts. to the Codes, Ex. Sess. 1911, p. 305.) But the provisions of said charter relating to the powers and jurisdiction of the police court of said city are in no manner or degree repugnant to or inconsistent with the powers and jurisdiction of justices' courts as conferred by section 1425 of the Penal Code. And we think it is very plain that the judicial scheme established by said charter was intended to and does supersede or take the place of any previously established scheme for a police court for said city.

Article XII of the charter of said city contains, among other provisions, the following: "Sec. 162. There is hereby constituted a police court in and for the city of Sacramento. . . . Sec. 164. Said police court shall have jurisdiction: 1. Of all misdemeanors enumerated by the general laws or by ordinances of the city and of all other crimes cognizable by justices' courts and courts of justices of the peace and police courts under the constitution and laws of the state of California. . . . 3. Of the examination and commitment of persons charged with the commission of any offense that may be prosecuted by indictment or information; 4. Such other criminal jurisdiction as is, or may hereafter be, conferred by law upon police courts, justices' courts, or justices of the peace. . . . "

The validity of said article of the said charter is not questioned here, nor could it be successfully. The authority for the establishment of police courts by freeholders' charters is in section 8½ of article XI of the constitution. That authority was first conferred by the people through the constitution by an amendment added to that instrument in the year 1896. (Sec. 8½, art. XI.) Prior to the adoption of that amendment courts could not be established by a freeholders' charter, or by a mere concurrent resolution, the means whereby the state legislative body approves such a charter. (*Ex parte Sparks*, 120 Cal. 395, [52 Pac. 715].) Parenthetically, it may be stated that the said amendment has since been added to by other amendments adopted by the people, which, however, in no way affect the question submitted here.

By the provisions, then, of the charter of the city of Sacramento we must be guided in determining the powers and jurisdiction of the police court of said city, and whether the jurisdiction so conferred is made exclusive as to all misdemeanors cognizable by justices' courts committed within the borders of said city. Under cardinal canons of construction, the article in said charter creating and establishing a police court in said city supersedes or necessarily repeals, so far as the city of Sacramento is concerned, any provisions of any previous section purporting to confer jurisdiction upon said court.

It is very clear that the provisions of said charter setting up a police court in said city do not pretend, nor can they reasonably be construed to have been intended, to confer upon the court so established *exclusive* jurisdiction of all simple misdemeanors committed within the limits of said city. The word "exclusive" is nowhere used in those provisions. It is obvious to our minds that the most that was intended by those provisions of the charter, so far as are concerned misdemeanors committed under the general laws of the state, is that the police court of said city shall have concurrent jurisdiction with the justices' courts of the county of such misdemeanors when they are committed within the limits of said city. This clearly appears to be true from the language of the first subdivision of section 164, viz.: "Said police court. shall have jurisdiction of all misdemeanors enumerated by the general laws of the state . . . and *of all other crimes cognizable by justices' courts and courts of justices of the peace,*" clearly meaning, not that thus the several justices' courts of

the county of Sacramento shall not exercise the jurisdiction over misdemeanors committed anywhere within the territorial boundaries of the county of Sacramento, including, of course, the city of Sacramento, as provided by section 1425 of the Penal Code, but that, as stated, the police court may also exercise, along with the justices' courts of the county acting upon the authority of the mentioned section of the Penal Code, jurisdiction over "all misdemeanors enumerated by the general laws of the state" committed within the limits of said city. We can perceive no reasonable ground upon which any other construction can be given the provisions of the charter under consideration.

It will not, of course, be doubted that but for that particular provision of the Sacramento city charter which gives to the police court its jurisdiction over misdemeanors under the general laws, or a like provision in some general law of the state, the police court of said city would not have jurisdiction over such misdemeanors or of "other crimes cognizable by justices' courts," whatever those "other crimes" might be if not coming within the category of misdemeanors; for the powers and jurisdiction of a police court proceed from special legislative grant only, and when a statute or a charter, legally sanctioned by the legislature, undertakes to establish such a court and to grant to it the requisite powers and jurisdiction for its limited purposes, such court's powers and jurisdiction must be measured by and remain within the terms of the grant.

Our conclusion is, as must be manifest from the views herein expressed, that, if the Whitney Act ever applied to the police court of the city of Sacramento, its provisions, so far as they purport to give that court exclusive jurisdiction of misdemeanors punishable by fine not exceeding five hundred dollars or imprisonment not exceeding six months, or by both such fine and imprisonment, committed within the limits of the city of Sacramento, have been, so far as said city is concerned, repealed or superseded by the more recent legislative mandate on that subject as expressed in section 1425 of the Penal Code; that, moreover, said provisions have been superseded by the provisions of the freeholders' charter of said city, adopted and approved in the year 1911, establishing a police court therein and prescribing and regulating its powers and jurisdiction, and that said charter provisions are

not in conflict with or repugnant to any provision of section 1425 of the Penal Code. It follows, of course, that the justice's court of Riverside township did not transcend its lawful authority and jurisdiction in taking cognizance of and trying the case made against the petitioner by the complaint charging him with a misdemeanor under the general law of the state.

Accordingly, the demurrer to the petition is sustained, the writ discharged, and the petitioner remanded.

Chipman, P. J., concurred.