[Crim. No. 503.   Third Appellate District.—May 3, 1920.]

## THE PEOPLE, Respondent, v. T. WAH HING, Appellant.

[1] MEDICAL PRACTICE ACT—SUFFICIENCY OF TITLE.—The title of the State Medical Practice Act, approved June 2, 1913, (Stats. 1913, p. 722), is sufficiently comprehensive to include the matters contained in section 17 thereof.

[2] ID.—VIOLATION OF SECTION 17—SUFFICIENCY OF INFORMATION.—An information which alleges that the defendant at a given time and place "did then and there willfully and unlawfully practice, attempt to practice and advertise and hold himself out as practicing a system or mode, of treating the sick and afflicted in the State of California, without having at the time of so doing a valid unrevoked certificate from the State Board of Medical Examiners of the State of California," sufficiently charges a violation of section 17 of the State Medical Practice Act.

[3] ID.—CONVICTION OF VIOLATION OF ACT—SUFFICIENCY OF EVIDENCE. In this prosecution for a violation of section 17 of the State Medical Practice Act, in which the defendant was tried and convicted, the evidence was sufficient to justify the verdict.

[4] ID.—POSSESSION OF CERTIFICATE—BURDEN OF PROOF.—In a prosecution for a violation of section 17 of the State Medical Practice Act, the burden is on the defendant to prove that at the time charged in the information he had a valid, unrevoked certificate from the state board of medical examiners; and where such proof is not offered, it must be taken as true that he had not procured a certificate to practice medicine.

[5] ID.—REASONABLE DOUBT — PROPER INSTRUCTION.—An instruction that the term "reasonable doubt" as applied to the evidence in criminal cases means an actual and substantial doubt arising from the unsatisfactory nature of the evidence of the case, and does not mean a doubt which may arise from some whim or vagary or from any groundless surmise or guess, is not erroneous.

[6] MUNICIPAL CORPORATIONS — SACRAMENTO — POLICE COURTS—JURISDICTION AS TO MISDEMEANORS.—The jurisdiction of the police court of the city of Sacramento, as to misdemeanors committed under the general laws of the state, is concurrent with that of the justices' courts of the county of Sacramento.

APPEAL from a judgment of the Superior Court of Sacramento County.   Malcolm C. Glenn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

T. H. Christiansen, Robert B. McMillan, S. Luke Howe, C. E. McLaughlin and C. P. McLaughlin for Appellant.

U. S. Webb, Attorney-General, J. Chas. Jones, Deputy Attorney-General, Harry A. Encell and Frank M. Smith for Respondent.

NICOL, P. J., *pro tem.*—Defendant was charged by an information filed in the superior court of Sacramento County with a violation of section 17 of the State Medical Practice Act, approved June 2, 1913 (Stats. 1913, p. 722). The information alleges that: "The said T. Wah Hing on the —— day of August 1919, at the County of Sacramento in the said State of California and before the filing of this information did then and there willfully and unlawfully practice, attempt to practice and advertise and hold himself out as practicing a system or mode of treating the sick and afflicted in the State of California, without having at the time of so doing a valid unrevoked certificate from the State Board of Medical Examiners of the State of California."

The defendant was tried and convicted and prosecutes this appeal from the judgment and the order denying his motion for a new trial.

[1] The defendant attacks the constitutionality of the law on the ground that the title of the act is not sufficiently comprehensive to include the matters contained in said section 17. A similar objection was raised to the title of this act in *People* v. *Jordan,* 172 Cal. 391, [156 Pac. 451], and was decided adversely to appellant's contention. In that case it was contended that the title of the Medical Practice Act violated the provisions of section 24 of article IV of the constitution in that the title was not sufficiently expressive of its contents. The court, in passing upon this contention, said: "It is first contended that the title of the act is not sufficiently expressive of its contents, and that section 24 of article IV of the constitution is violated thereby. Analyzed further, the contention is that the title of the act does not suggest a purpose of the legislature to regulate the business or practice of those who engage in healing or treating the sick or deformed, but to regulate only the matter of the examination of those who chose to apply for certificates, which documents are to merely certify that the holders

thereof have been duly examined and licensed. This contention, if it were conceded to be well founded, would result in a construction to be given to the act which would permit all persons whomsoever to practice medicine, or any mode or system of healing, without being licensed, and would make the matter of procuring a license or certificate merely optional. Admittedly the body of the act is broad and comprehensive enough to regulate the practice of all persons who shall engage in the business of treating the sick or deformed. . . . A liberal rule of construction has been adopted, however, in the interest of protecting meritorious legislation from being declared void through inartificially constructed titles. 'The main object of this provision is to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another. . . . It seems to be well settled that it is not necessary that the title of an act should embrace an abstract or catalogue of its contents.' (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383].) . . . To our minds, by the title of the act here being considered, wherein it set forth the purpose to regulate the examination of applicants for license to treat the sick or deformed, there is suggested at once that the state has proposed to require examinations to be made and licenses to be issued to persons who shall engage in that business. The prohibition that persons not so licensed shall be denied the right to practice seems pertinent and germane to the subject expressed in the title. Several of the illustrative cases given in *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 261], are directly in point.

"Our conclusion on this branch of the case is that the objection as stated in the briefs that the title of the act is not sufficient in its expression of the purposes declared in the body of the act itself, is without merit."

[2] The defendant claims that the information is insufficient in that it "does not conform to the sections of the Penal Code [secs. 950, 952] requiring clearness and certainty in charging crime." That it does not give the name of any patient, or disease treated, the mode or system of treatment practiced, but "charges that defendant practiced, attempted to practice and held himself out as practicing a mode or system of healing the sick and afflicted."

The information in this case is substantially the same as the information that was before the supreme court in *People* v. *Ratledge*, 172 Cal. 401, [156 Pac. 455], and which the court held sufficiently charged a violation of section 17 of the said Medical Practice Act. The court said: "The information is attacked upon the ground that it charges 'the crime of practicing medicine without a certificate from the medical board,' the contention being that no such crime is denounced by the law. It is true that the statute does not contain the quoted words but clearly they are used merely for purposes of general description of the offense as they are followed by the averment that the crime was 'committed as follows: that the said T. F. Ratledge on the thirtieth day of October, 1914, at, and in the county of Los Angeles, state of California, did willfully, and unlawfully practice, attempt to practice and advertise and hold himself out as practicing a system and mode of treating the sick and afflicted in the state of California, without then and there having a valid, unrevoked certificate authorizing him to practice a system or mode of treating the sick and afflicted in this state from the board of medical examiners of the state of California.' This sufficiently charges a violation of section 17 of the Medical Practice Act (Stats. 1913, p. 734), and is not open to the criticism that it seeks to impute many offenses to defendant because any one of the acts or omissions averred and conjunctively pleaded would suffice as the basis of an information. (Citing cases.) This information does not fall within the rule declared in *People* v. *Plath*, 166 Cal. 227, [135 Pac. 954]."

[3] It is argued on behalf of appellant that the evidence is insufficient to justify the verdict. It appears from the record that on the thirteenth day of August, 1919, one Mrs. Francis Sweeney, who was then employed by the state board of medical examiners, called at the office of the defendant in Sacramento and asked him if he was Doctor T. Wah Hing, to which defendant replied that he was. She told him that she was afflicted with nervousness and not able to sleep. He felt her pulse, said he would give her some medicine to cure her, and gave her a package of herbs, giving directions as to their use and charged her $3.50, which she paid. She then left his office and returned shortly after with one Edward P. Morse, then a special agent of the state

board of medical examiners. The defendant stated to said Morse that he had treated Mrs. Sweeney for nervousness and prescribed medicine for her and had charged her $3.50. He told Morse that he was a regular practicing physician, and had been for twenty years in Sacramento. That he treated any kind of a case; that he gave internal and external remedies. He took Morse to his drug-store in the rear of this office, where there was a large assortment of herbs and drugs. He also exhibited to Morse a record of his patients showing various names and dates, and amounts against those names. There was also introduced in evidence a card, which reads: "Telephone Main 725. Dr. T. Wah Hing, Chinese Physician and Surgeon, also Eye, Ear, Nose and Throat. Office 725 J Street, Sacramento, Cal. Office Hours 9 to 11 a. m., 1 to 3, 7 to 9 p. m." This card was handed to Mr. Morse by the defendant.

This evidence is ample and sufficient to sustain the conviction of the defendant, and in addition to the foregoing there was other and additional evidence which tends strongly to support the verdict.

[4] The defendant claims that the judgment should be reversed for the reason that no proof was offered showing that the defendant did not, at the time charged in the information, have a valid, unrevoked certificate from the state board of medical examiners. A similar question was before the supreme court in *People* v. *Boo Doo Hong,* 122 Cal. 606, [55 Pac. 402]. In that case the defendant was charged by information with the crime of willfully and unlawfully practicing medicine without having first procured a certificate to so practice as required by law. At the trial uncontradicted evidence was introduced showing that defendant had been practicing medicine, but no evidence was introduced on either side showing, or tending to show, that defendant had not a certificate to so practice as required by law. The court instructed the jury, in effect, that the burden was upon the defendant to establish that he had a certificate to practice medicine as provided by law, and, if he failed to prove that he had such certificate, then it must be taken as true that he had not procured a certificate to so practice medicine.

The court, in sustaining this instruction, among other things, said: "Mr. Greenleaf, in his work on Evidence,

volume 1, section 79, under the heading 'Negative Allegations,' says: 'But when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, and the like. . Here the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great.'

"In 1 Jones' Law of Evidence, section 179, under the heading 'Burden as to particular facts lying peculiarly within knowledge of a party,' it is said: 'This is often illustrated in prosecutions for selling liquors or doing other acts without the license required by law. By a few authorities the rule is prescribed that in such cases the prosecution must offer some slight proof of the fact that no license has been granted, for example, by producing the book in which licenses are recorded; and, if the book fails to show that a license has been granted, the burden is shifted upon the defendant to prove the fact claimed by him; but the greater number of authorities hold that where a license would be a complete defense the burden is upon the defendant to prove the fact so clearly within his own knowledge.'

"We think the rule upon this subject generally recognized and followed the correct one, and therefore conclude that the court did not err in giving the instruction complained of, and that the verdict was justified by the evidence."

[5] Complaint is made that the court erred in its instructions upon the doctrine of reasonable doubt. After fully instructing the jury on this subject in the oft-approved language of Chief Justice Shaw, the court gave the following instruction, which the defendant claims is error: "The term reasonable doubt as applied to the evidence in criminal cases means an actual and substantial doubt arising from the unsatisfactory nature of the evidence of the case. It does not mean a doubt which may arise from some mere whim or vagary or from any groundless surmise or guess." A similar instruction to this was held by this court not to be erroneous in the case of *People* v. *Del Cerro*, 9 Cal. App.

764, [100 Pac. 887], and the court there said "that, rightly understood, the instruction is in reality within the definition of the doctrine of reasonable doubt as given by Chief Justice Shaw."

Other objections are based upon the modification and the refusal of certain instructions. We have examined these objections and without entering upon a discussion of them in detail, we think it is sufficient to say that they are without merit. The jury was very fully and fairly instructed by the court.

[6] Finally, the appellant claims that under the charter of the city of Sacramento, ratified by the legislature in 1911 (Stats. 1911, Extra Sess., p. 305), the police court of said city has jurisdiction over all misdemeanors, no matter what may be the amount of the fine or the length of imprisonment. This contention of appellant is based on the first subdivision of section 164 of the said charter, which provides as follows: "Said police court shall have jurisdiction: (1) Of all misdemeanors enumerated by the general laws or by ordinances of the city and of all other crimes cognizable by justices' courts and courts of justices of the peace and police courts under the constitution and laws of the state of California."

We cannot agree with appellant in this contention. It is nowhere provided in said charter that the police court of the city of Sacramento shall have jurisdiction of misdemeanors where the maximum penalty is by fine exceeding five hundred dollars, or imprisonment exceeding six months.

This court held in the *Matter of the Application of Yee Kim Mah,* 31 Cal. App. 196, [159 Pac. 1060], that the provisions of said charter creating a police court in the city of Sacramento did not "confer upon the court so established exclusive jurisdiction of all simple misdemeanors committed within the limits of said city. The word 'exclusive' is nowhere used in those provisions. It is obvious to our minds that the most that was intended by those provisions of the charter, so far as are concerned misdemeanors committed under the general laws of the state, is that the police court of said city shall have concurrent jurisdiction with the justices' courts of the county of such misdemeanors when they are committed within the limits of said city."

It is obvious from the foregoing that the jurisdiction of the said police court as to misdemeanors committed under the general laws of the state is the same as the justices' courts of Sacramento County.   There is no provision of said charter that supersedes or that is in conflict with or repugnant to any of the provisions of section 1425 of the Penal Code. The judgment and order appealed from are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 1, 1920.

All the Justices concurred.