[Crim. No. 914.  Second Appellate District, Division Two.—December 16, 1922.]

## THE PEOPLE, Respondent, v. CHARLES ROSS, Appellant.

[1] CRIMINAL LAW—CARRYING CONCEALED WEAPON—EVIDENCE.—In this prosecution for carrying a concealed weapon in violation of section 3 of the act of 1917, the evidence was sufficient to warrant the jury in concluding that the defendant was carrying a pistol concealed upon his person.

[2] ID.—LICENSE TO CARRY WEAPON—BURDEN OF PROOF.—In a prosecution for carrying a concealed weapon in violation of section 3 of the act of 1917, the burden is upon the defendant to prove that he had a license to carry such weapon, and it is not incumbent upon the prosecution to prove that no license had been issued to him.

[3] ID.—REMARK OF JUDGE—ABSENCE OF ERROR—INSTRUCTIONS.—In such a prosecution, the defendant cannot predicate reversible error upon the statement of the trial court, made in connection with one of his rulings upon the prosecution's objection to a certain line of questions being asked by defendant's counsel, to the effect that the jury know "that it is made a crime for him to carry a weapon of that character if he has been convicted of a felony," where it is apparent from the other statements and instructions of the court that the jury must have understood that the reference was to a "concealed" weapon, and no objection or exception was taken at the time to the court's remarks.

[4] ID.—REFUSAL OF INSTRUCTIONS—APPEAL—INSUFFICIENT ASSIGNMENT OF ERROR.—Assignments of error based upon the refusal of proffered instructions will not be considered by the appellate court where the instructions refused are not set out in appellant's brief, and the only comment made upon them is the following: "We believe the court erred in refusing the instructions offered by the defense and found on p. 26 of the clerk's transcript. This instruction states the law as to presumption of innocence"— citing a case; and "The same is true of the instruction contained on p. 29 of the clerk's transcript"—citing an authority, and the record shows the court charged the jury respecting the presumption of innocence.

[5] ID.—PRIOR CONVICTION—ISSUES—EVIDENCE.—In such a prosecution it is not error to permit evidence of defendant's prior conviction

1. What amounts to carrying weapon within prohibitory statute, note, 11 Ann. Cas. 1105.

to be placed before the jury, where the defendant has pleaded "Not guilty as charged in the information," thus putting in issue the charge of the prior conviction as well as the principal offense.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

D. M. Edwards, Ernest Klette, J. C. Thomas and Nathan Merenbach for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant, who had previously been convicted of a felony, was charged by information filed in the superior court of Tulare County with carrying a pistol concealed upon his person, in violation of section 3 of the act of 1917, which reads: "Every person who carries in any city, city and county, town or municipal corporation of this state any pistol, revolver or other firearm concealed upon his person, without having a license to carry such firearm as hereinafter provided in section six of this act, shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony." Having been found guilty as charged in the information, defendant is now before this court on his appeal from the judgment.

The principal point relied on for a reversal is that the evidence is insufficient to justify the verdict. It seems that defendant, while standing in a street of the city of Tulare, produced from somewhere a pistol with which he repelled an attack made upon him by a man of the name of Jaynes. While standing beside an automobile belonging to one V. S. Jones, with his right arm, which had been broken, resting on the body of the car, conversing with Jones, defendant was shot by Jaynes, who fired four times at him from the rear of Jones' automobile. Wounded in the thigh by one of the shots from Jaynes' pistol, defendant, as the scene was described by one of the witnesses, "doubled over as though he was falling, and when he straightened back up he had

a gun in his hand." Holding this "gun" in his left hand, defendant fired several shots at Jaynes. Jones testified that there was no weapon in his automobile, and that he did not see any weapon on defendant's person prior to the shooting. Immediately after the affray defendant went to a poolroom, where he laid the weapon on the counter. When he left he picked it up and took it away with him. From the poolroom he went to a hospital to have his wound dressed. Dr. Zumwalt, a witness for the prosecution, testified that at the hospital the pistol was taken from a pocket of defendant's coat as it lay on a table, and that when in the pocket it was concealed from sight. The city marshal testified that shortly after the arrest he asked defendant why he was carrying a "gun," and that the latter replied that "at times he had sums of money on him, and he carried it for his protection." This witness further testified that he later said to defendant: "Ross, you know what this means, don't you; a man formerly convicted of a felony carrying a concealed weapon?" and that to this question defendant replied: "Yes, I know what it means; it means one to five." Another witness for the prosecution, an eye-witness to the shooting, testified that he saw defendant when the latter came up to Jones' automobile, and that at that time he saw no firearm lying around any place. The foregoing constitutes the substance of the people's case, except that it also was shown by a certified copy of the record that defendant had previously been convicted of a felony in the superior court for Imperial County.

Defendant, who took the stand in his own behalf, testified that he never saw the pistol prior to the shooting, but that when Jaynes shot him as he stood talking to Jones beside the latter's car he "went right down over that way and picked a gun up . . . picked it up with my left hand. . . . I picked it up on the running-board"—referring to the running-board on Jones' automobile.

[1] We think it clear that the evidence was sufficient to warrant the jury in concluding that appellant was carrying a pistol concealed upon his person. It, of course, is within the range of possibility that the weapon was lying on the running-board of the automobile, even though Jones did testify that there was no pistol in his car, and even though another witness for the prosecution testified that he saw no

firearm lying around as defendant stood beside the automobile. But though it is possible that the pistol lay on the running-board just where appellant, at the moment of emergency, could reach for it and thus, forsooth, unexpectedly discover at his hand a lethal weapon wherewith to defend himself against the unanticipated attack, the probability of such a miraculous find was for the determination of the jury. From a consideration of all the evidence the jurors might 'well have inferred that no pistol lay opportunely on the running-board of his friend's car ready for defendant's convenient use in the moment of his dire necessity, but that that worthy, with canny prescience, had prudently prepared himself for just such a contingency by concealing the weapon on his person ready for instant use. Did the jurors credit the prodigies attributed to the mythical Merlin, and had they beheld the marvelous apparition of King Arthur's fair sword Excalibur as it was presented to him from out the waters of the lake by the arm "clothed in white semite," they might have given faith to defendant's wondrous story of the appearance of the pistol; but to hard-headed, practical men of affairs the instant appearance of the weapon at defendant's feet just when he needed it most must have savored too much of the thaumaturgic art of the magician to justify ready credence.

[2] The only evidence offered by the prosecution to prove that defendant had no license to carry a firearm was that of the city marshal, who testified that no license had been issued by him to defendant. Appellant claims that this was not sufficient. Because it was not shown to what class the city of Tulare belongs it is argued that the municipality may have had a board of police commissioners, or a chief of police or other head of the police department by whom a license might have been issued. The contention lacks merit. It was not incumbent upon the prosecution to show that no license had been issued to appellant. The clause of the statute which exempts from its penal provisions those persons who have been licensed to carry firearms is so incorporated into and made such a substantial part of the definition of the offense that it doubtless was necessary to allege in the information that appellant was without a license to carry the pistol. There is such an allegation in the information, but it presents a negative which the prosecution was not

called upon to prove, for the truth or falsity of the aver-
ment lay more immediately within the knowledge of the de-
fendant himself. It is a well-settled rule of law that where
the negative of an issue does not permit of direct proof,
or where the facts come more immediately within the knowl-
edge of the defendant, the *onus probandi* rests upon him.
This doctrine is illustrated in cases of practicing medicine
without a license or of selling spirituous liquors without a
license. (*People* v. *Boo Doo Hong,* 122 Cal. 606 [55 Pac.
402]; *People* v. *Fortch,* 13 Cal. App. 770 [110 Pac.
823]; *People* v. *Hing,* 47 Cal. App. 327 [190 Pac. 662].
*People* v. *Goscinsky,* 52 Cal. App. 62 [198 Pac. 40]; *People*
v. *Spagnoli,* 58 Cal. App. 154 [208 Pac. 185].) In a
prosecution for carrying a firearm concealed upon the person
it would in many cases cast a great burden upon the people
if they were required to prove that no license had been
issued to the defendant. To do so the prosecution would
have to show that the various magistrates who had jurisdic-
tion to grant licenses had not in fact issued one in the par-
ticular case. If a license has been issued that fact is more
immediately within the knowledge of the defendant and can
be easily established by him; and there is no hardship or
injustice in placing so slight a burden upon him. (*People*
v. *Grass,* 79 Misc. Rep. 457 [141 N. Y. Supp. 204].)

[3] Appellant complains of injury arising from a re-
mark made by the court during the progress of the trial.
It seems that during the cross-examination of one of the
people's witnesses the district attorney objected to a line of
questions designed to bring out the fact that during his
affray with Jaynes the defendant had been shot. In ruling
on one of these objections the court said: "Well, allow him
to testify. The very best way is to let it in because it
occurred right there simultaneously, at one time. The jury
are not going to misunderstand the instructions of the court;
they know what matters—that *it is made a crime for him to
carry a weapon of that character* if he has been convicted
of a felony." Appellant now claims that by the words
which we have italicized, "it is made a crime for him to
carry a weapon of that character," the jurors were given
to understand that the law makes it an offense simply to
carry a weapon, concealed or unconcealed. But when this
part of the court's remarks is considered in connection with

what had just preceded it is evident that it is not subject to the construction placed upon it by appellant. In ruling upon a similar objection a moment or two previously the learned trial judge had said: "The defendant is charged with carrying a *concealed* weapon—having a weapon of *that* character in his possession." So that when, shortly after making this statement, the court said "it is made a crime for him to carry a weapon of *that* character," the jurors, as reasonable men, must have understood that the reference was to a "concealed weapon." Particularly is this so in view of the fact that in its formal charge to the jury the court carefully and accurately defined the offense described by the statute. The case clearly falls within the views announced in *People* v. *Mayes,* 113 Cal. 622, 623 [45 Pac. 860]; *People* v. *Woon Tuck Wo,* 120 Cal. 294 [52 Pac. 833], and *People* v. *Mooney,* 132 Cal. 13, 17 [63 Pac. 1070]. Nor was any objection made or exception taken to the court's remarks. As was said in *People* v. *Kramer,* 117 Cal. 651 [49 Pac. 843]: "The defendant cannot remain silent and take the chance of a favorable issue, and, losing, urge as ground for reversal an error which, but for his silence, might never have found its way into the case. His failure to object justly gives rise to the inference that at the time he saw no injury being done him, and he cannot complain on being met here by a barrier arising from his own omission." To the same effect are *People* v. *Miller,* 177 Cal. 404, 408 [170 Pac. 817], and *People* v. *Osborn,* 12 Cal. App. 148 [106 Pac. 891].

[4] Error is claimed in refusing defendant's proffered instructions Nos. 3 and 6. These instructions are not set out in appellant's brief, and the only comment made upon them is the following: "We believe the court erred in refusing the instruction offered by the defense and found on p. 26 of the clerk's transcript. This instruction states the law as to presumption of innocence"—citing a case; and "The same is true of the instruction contained on p. 29 of the clerk's transcript"—citing an authority. We are not called upon to test the sufficiency of assignments of error thus made. The court charged the jury respecting the presumption of innocence; and if appellant believes that the instruction as given was not sufficiently informing we are entitled to know it by a more specific and illuminating

assignment of error. (*People* v. *Wademan*, 38 Cal. App. 132 [175 Pac. 791]; *People* v. *Zarate*, 54 Cal. App. 372 [201 Pac. 955].)

[5] Finally, it is urged that the court erred in permitting evidence of defendant's prior conviction to be placed before the jury. It is claimed that this was done in violation of section 1025 of the Penal Code. The point was never suggested by counsel in the trial court. It apparently is an afterthought, and is made for the first time in appellant's reply brief. For this reason we would be justified in ignoring it. We have, however, given the point consideration, and on examining the record find that there is no ground for the objection. The Penal Code provision which it is claimed was not observed (sec. 1025) provides that if a defendant, charged with having suffered a previous conviction, pleads not guilty of the offense for which he is informed against but answers that he has suffered such previous conviction, then "the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." The minute entry made by the clerk at the time of the arraignment states that defendant was informed by the court of his legal rights, and that after being so informed he waived the reading of the information and upon being given a copy thereof pleaded "Not guilty as charged in the information." This plea put in issue the charge of the prior conviction as well as the principal offense. (Pen. Code, sec. 1019; *People* v. *Gutierrez*, 74 Cal. 81 [15 Pac. 444]; *People* v. *Wheatley*, 88 Cal. 114 [26 Pac. 95].) The question as to whether or not defendant had suffered such prior conviction was, therefore, properly submitted to the jury.

In conclusion we have only to add that defendant has been convicted by a jury, and that there is nothing in the record before us to induce the belief that he did not have a fair and impartial trial on the merits, or that he was deprived of any legal or technical benefit or advantage given him by the law.

The judgment is affirmed.

Works, J., and Craig, J., concurred.