25 N.J. Super. 24 (1953)
95 A.2d 431
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE RABATIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1952.
Decided March 5, 1953.
*26 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. C. Zachary Seltzer argued the cause for appellant (Mr. N. Morton Rigg, attorney).
Mr. Harold T. Parker, Prosecutor of Burlington County, argued the cause for respondent.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The defendant George Rabatin was tried and convicted in the Burlington County Court on two indictments. One indictment charged that on December 27, 1951, he "willfully and unlawfully did make and take what is commonly known as a book upon the running of horses, mares and geldings contrary to the provisions of R.S. 2:135-3 * * *" and the other indictment charged that on December 27, 1951, he "unlawfully did carry concealed in a certain automobile, which said automobile was then and there owned by the said George Rabatin, a certain firearm, to wit, a.32 calibre Colt Revolver, without having first obtained the requisite permit to carry the same, contrary to the provisions of R.S. 2:176-41 * * *." After the defendant and another witness had been heard on the defendant's case, the defendant rested and moved for a judgment of acquittal.
*27 The proofs for the State were that State Trooper Perrine first saw the defendant on November 26, 1951, when the latter and another person then under surveillance by Perrine met in a diner on State Highway 25 and High Street in the City of Burlington. Thereafter, Perrine saw the defendant between 11:15 A.M. and 12:15 P.M. almost every day until December 27, 1951, and followed him occasionally. At the times when he was followed, the defendant always drove a 1948 black Cadillac sedan, registration number CT56M, to Roebling, New Jersey, and parked his car across the street from a store located at 18 Alden Avenue.
On December 27, 1951 several state policemen, including Perrine, met near the Burlington Country Club by prearrangement, for the purpose of making raids in certain places in Burlington County. State Troopers Skok, Olaff and Allen were assigned to make the raid on 18 Alden Avenue, Roebling. Perrine gave them the license number and a description of the defendant's Cadillac car, and informed them of the location of defendant's poolroom at 18 Alden Avenue. Perrine saw the defendant in Mount Holly at about noon on December 27, 1951, driving his Cadillac car, license number CT56M, and headed toward Burlington. When the three state troopers arrived at Alden Avenue, Roebling, at about 1:30 P.M. to make the raid, they saw the Cadillac, license CT56M, which had been described by Perrine, parked across the street from 18 Alden Avenue. Trooper Allen was detailed to search the car, while Troopers Olaff and Skok were to go into the building at No. 18. Allen found the car unlocked, and in the glove compartment he found five slips of paper on which were recorded bets totaling $99 on horse races to be run that day, and underneath the front seat on the driver's side he found a fully loaded .32-caliber Colt revolver. The revolver could not be seen from any position outside the car, nor from any position inside the car without leaning over in front of the front seat and looking underneath.
Officer Olaff attempted to enter by the front door of 18 Alden Avenue, but found the door locked. As Officer Skok *28 proceeded to a side door, a man opened this door and ran from the premises. Inside the premises the officers found the defendant and one other person. A Morning Telegraph and an Armstrong Sport Sheet, each dated December 27, 1951, were found on a table in the back room. There was no merchandise on the counter, no cash register, nor anything else to indicate that the store was open for regular business. On the defendant's person they found a car registration in his name for the Cadillac car which was parked across the street, keys, a blue notebook, and a scratch pad. At least two of the slips recording the horse bets, which had been found in the glove compartment of the car, were of the same size and paper as the sheets of the scratch pad found on defendant, and had a similar red gum thereon.
When Officer Olaff asked the defendant where his car was, he replied that his wife had it, and when asked about the gun found in the car, the defendant "just shrugged his shoulders." When Officer Perrine asked him what he was going to do with the gun, the defendant replied that "he had a lot of enemies."
The defendant admitted that he conducted a poolroom at 18 Alden Avenue, but denied that there was any horse betting or bookmaking going on in his place on December 27, 1951, or at any other time; denied that the slips recording the horse race bets were his; denied he had ever seen the gun before, and denied that the blue notebook and the scratch pad found on him had any connection with bookmaking or horse betting. He testified further that on the previous evening, December 26, 1951, he had loaned his car to a friend named Cardis and that he had not seen the car again prior to the raid. He stated that he carried the scratch pad in his pocket for use in figuring out his bills, and he explained the numerous entries in the blue notebook with both plus and minus sums and definitely named persons as records of moneys owed by him and to him. On cross-examination, he admitted that some of the items in the notebook represented horse bets, and testified that the bets were legitimately made at Garden State Track by him for other people. With *29 regard to the Morning Telegraph and the Armstrong Sport Sheet of December 27, 1951 found on the premises, he testified:
"Well, I buy those sometimes. Like I said, I like to bet horses, you know; like to see what's running, you know. Maybe next spring, you know, next summer, when the tracks will be open in Jersey so maybe I could, you know, study them so I could pick myself a winner."
Cardis testified, as a witness for the defendant, that the Cadillac was loaned to him on the evening of December 26, 1951, and that he became intoxicated that evening, slept in the car all night, and about 1 P.M. on December 27, 1951 parked the car across the street from the defendant's poolroom, without letting the defendant know that he had done so.
We are satisfied that a jury question was presented as to whether or not the Cadillac sedan and the revolver and the five horse race betting slips found in the car were in the custody and under the control of the defendant. The car was owned by and registered in the name of the defendant. There was testimony that he was seen driving it, almost daily between November 26, 1951 and December 27, 1951; that when followed, he always drove this car to Roebling and parked it at the same place where it was found on the day of the raid; and that on December 27, 1951, at about noon, which was only an hour and a half before the time the raid was made on his poolroom at 18 Alden Avenue, he was seen driving this car from Mount Holly toward Burlington. The testimony of the defendant and his witness Cardis concerning custody and control did no more than raise a question of fact for the determination of the jury.
As to the conviction for bookmaking, we think there was sufficient competent evidence to permit an inference by the jury that the defendant was guilty of bookmaking on December 27, 1951, as charged. Therefore, the trial court properly denied the motion for judgment of acquittal which was made at the end of the entire case. Cf. State v. De Falco, 8 N.J. Super. 295 (App. Div. 1950), certif. den. 5 N.J. 483; *30 State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950); also State v. Costa, 11 N.J. 239 (1953); and State v. Clark, 137 N.J.L. 10 (Sup. Ct. 1948), affirmed o.b. 137 N.J.L. 614 (E. & A. 1948).
The conviction for the crime of carrying a concealed weapon is attacked (1) on the ground that the State failed to prove the essential element that the gun was concealed, and (2) on the ground that the State failed to prove that the defendant did not first obtain the requisite permit to carry the gun.
R.S. 2:176-41, in pertinent part, provides:
"a person who shall carry in any automobile * * * or other vehicle, or concealed on or about his clothes or person; a. A pistol, revolver or other firearm without having first obtained a permit to carry the same in accordance with the provisions of this chapter * * * Shall be guilty of a misdemeanor."
The indictment charged that he carried the gun "concealed in a certain automobile * * *." To prove that a weapon is a concealed weapon under this type of statute, it is sufficient to prove that ordinary observation will give no notice of its presence; it is not necessary to prove that it is carried in such manner or in such a location as to give absolutely no notice of its presence under any kind of observation. 56 Am. Jur., Weapons, § 10. Cf. People v. Euctice, 371 Ill. 159, 20 N.E.2d 83 (Sup. Ct. 1939). Here the proof was that the revolver was found under the front seat of the car, in such a location that it could not be seen from outside the car and could be seen from within only by leaning over in front of the front seat and looking underneath. Thus there was sufficient evidence to support a finding that the revolver was concealed. The question whether a revolver carried in an automobile must be concealed in order to constitute a violation of R.S. 2:176-41 (now N.J.S. 2A:151-41) was not before us and we express no opinion thereon.
The fact that the State failed to prove that the defendant did not first obtain the requisite permit to carry *31 the revolver is of no aid to the defendant. It was not incumbent upon the State to show that no permit had been issued to the defendant. The allegation in the indictment "without having first obtained the requisite permit to carry the same" is a mere allegation of the definition of the offense set forth in the statute, but it presents a negative which the State was not called upon to prove, for the truth or falsity of the averment lay more immediately within the knowledge of the defendant himself. It is a well settled rule of law that where the negative of an issue does not permit of direct proof, or where the facts more immediately lay within the knowledge of the defendant, the onus probandi rests upon him. Cf. Plainfield v. Watson, 57 N.J.L. 525 (Sup. Ct. 1895) (liquor license); People v. Ross, 60 Cal. App. 163, 212 P. 627 (Dist. Ct. App. 1922) (firearms license); State v. Sockum, 29 Del. 350, 99 A. 833 (Gen. Sess. 1917) (firearms license); 20 Am. Jur., Evidence, § 150.
We conclude that the trial court properly denied the defendant's motion for judgment of acquittal on the charge of carrying the revolver in the automobile. Further, our review of the record convinces us that the jury verdict on this charge was not against the weight of the evidence. Cf. State v. Martinek, 12 N.J. Super. 320 (App. Div. 1951).
The judgments under appeal are affirmed.