58 N.J. Super. 464 (1959)
156 A.2d 709
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RALPH WITCHER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1959.
Decided December 11, 1959.
*466 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Herbert Koransky (assigned counsel) argued the cause for appellant.
Mr. William C. Brudnick argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendant appeals from two judgments of conviction entered by the County Court upon jury verdicts finding him guilty upon two accusations: (1) charging the receipt of stolen property contrary to N.J.S. 2A:139-1, and (2) charging the carrying of a concealed weapon, to wit, a "billy," contrary to N.J.S. 2A:151-41(b).
It should be noted preliminarily that the consideration of this appeal is not facilitated by the truncated appendix. While the abbreviated transcript of the testimony and the two paragraphs of an approximately 13-page charge furnished by defendant were supplemented by an appendix filed by the State, some troublesome omissions still exist. Also, the necessity of piecing together the entire testimony and complete charge by reference to separate appendices makes the court's labors more burdensome and tends to confusion. We deprecate this conduct of appellant, particularly when the county has been put to the expense of providing free a complete trial transcript.
It has recently become quite evident that some counsel do not faithfully and conscientiously comply with R.R. 1:7, made applicable to the Appellate Division by R.R. 2:7. We *467 do not impose costs on the present defendant since his is an appeal in forma pauperis. Gargano v. Venezio, 37 N.J. Super. 129 (App. Div. 1955). Nor will we grant plaintiff's motion for dismissal. However, lest leniency be considered condonation, let all counsel be warned that more stringent sanctions may be imposed in the future for similar breach of the rules.
On August 11, 1958 defendant was interviewed by Lt. Boulais and Sergeant Burgum, officers of the Hackensack Police Department, at 256 High Street, Hackensack. At their request, defendant drove a Cadillac automobile, then in his possession, to police headquarters, accompanied by the sergeant. Upon arrival, the two police officers examined the car. They discovered a sawed-off weighted end of a billiard cue approximately 17 inches in length under the front seat. The Cadillac was found to have been recently stolen from the sales lot of Lincoln Auto Sales.
Defendant gave an oral statement to the police which, when reduced to writing, he refused to sign because of his objection to the statement that the "billy" was found under the front seat and that it was described as a "concealed weapon." Having waived his right to indictment, defendant was charged by the two accusations above set forth. The testimony at the trial was as follows: A Herman Kraemer testified that he traded as Lincoln Auto Sales. In April 1958 the Cadillac owned by him, and later found in defendant's possession, was stolen from Kraemer's sales lot. Lt. Boulais testified to the discovery of the car in defendant's possession and the discovery of the instrument above described, which he stated was, in his opinion, a "billy or what is commonly known as a club," under the front seat of the car. Sergeant Burgum corroborated Boulais' testimony that he discovered the car in defendant's possession and that he found a "billy" under the front seat. Detective Aletta of the Hackensack Police Department identified the Cadillac found in defendant's possession as being the car stolen from Kraemer in April 1958.
*468 Defendant testified that some time in June 1958 a James Brockington, a social friend, stated he was about to go on a vacation and requested him to take charge of the Cadillac in question. Defendant being willing, Brockington turned over to him the car and the New Jersey registration therefor. Brockington told him that the car belonged to his nephew, Julius C. O'Neil, the registered owner. Defendant admitted that he had seen O'Neil only once and that was when possession of the car was given to him. He did not know O'Neil's immediate family. He had seen neither Brockington nor O'Neil for over two and one-half months.
He admitted that the sawed-off cue stick was discovered in the car but denied that it was found under the front seat. He testified that it was found upon the floor in the front of the car where it had lain since he had received the car from Brockington.
Upon direct examination defendant admitted that he had been convicted of the commission of a crime, to wit, armed robbery. Upon cross-examination the State elicited that he had likewise been convicted as follows: riding in a stolen automobile; breaking, entry and larceny; twice for desertion; armed robbery and carrying a concealed weapon, and had pleaded guilty to a violation of the federal law dealing with marijuana; violating his parole; and of armed robbery. After trial the jury returned a verdict of guilty on both accusations.
Defendant appeals from the judgment of conviction upon the grounds that the trial court committed error in that: (1) he permitted extensive and unnecessary cross-examination of the defendant concerning his criminal record; (2) he charged the jury that possession of stolen property within one year after the stealing is sufficient evidence to "justify" the jury in bringing in a guilty verdict; (3) he permitted testimony by police officers which characterized the sawed-off billiard cue as a "billy"; (4) the verdicts are against the weight of the evidence. At the argument defendant was permitted to make the additional contention that since the *469 instrument was not a "billy" he was improperly convicted on the count for concealed weapons.

I.
It should be noted that defendant testified on direct examination to one conviction of a crime, giving rise to the conclusion, by implication, that that was his sole conviction. On cross-examination defendant was interrogated by the prosecutor, as follows:
"Q. Tell the Court what other crimes you were convicted of? A. By a Jury?
Q. No, convicted of a crime. That doesn't mean only by a jury. If you pleaded guilty, that is a conviction, too. A. No, I can't tell you offhand.
Q. You don't remember all of them? A. It hasn't been that many.
Q. Hasn't been that many? A. No. I imagine you can tell me. You have them there."
The cross-examination then proceeded to direct defendant's attention to various convictions and such facts as the record of conviction, if produced, would have disclosed. The State's questions were not completely accurate in some minor respects as to the convictions. These discrepancies were corrected by defendant's answers. The court properly charged the effect of the testimony concerning prior convictions. There were no objections to any of the questions on behalf of defendant.
Testimony of prior convictions is admissible in a criminal cause for the purpose of affecting the defendant's credibility where he takes the stand. If the defendant admits such prior convictions the State may further cross-examine concerning any fact which the record of conviction would show. State v. Tune, 17 N.J. 100 (1954).
The court committed no error in this respect.

II.
Defendant does not dispute that the State adequately proved two of the essential elements of the crime of receipt of stolen *470 property: (1) that the automobile was stolen, and (2) was found in defendant's possession, and that the court properly charged these elements. However, defendant argues that N.J.S. 2A:139-1 provides that possession of stolen property within one year of the stealing may "authorize" but not "justify" a conviction. That statute reads, in part:
"Possession of such property within 1 year from the date of such stealing, robbery or unlawful or fraudulent obtaining, shall be deemed sufficient evidence to authorize conviction, unless the accused show * * *."
It should also be noted that in State v. Dancyger, 29 N.J. 76 (1959), the court said, at p. 87:
"* * * N.J.S. 2A:139-1 provides that possession of stolen property within one year of the theft, if unaccounted for, shall be deemed sufficient evidence to justify a conviction of receiving stolen goods. * * *" (Italics supplied.)
On at least three occasions prior to the section of the charge referred to by defendant, the court had adequately and completely charged the applicable statute, employing the statutory word "authorized." We must consider the charge as a whole and not an isolated word taken out of context in order to determine its legal worth. State v. Kollarik, 22 N.J. 558 (1956); State v. Smith, 27 N.J. 433 (1958). So analyzed, the charge, taken as a whole, was full, fair and adequate. The jury could not have been misled. There was no error in the charge.

III.
Defendant argues that he was prejudiced by the constant reference of the State's witnesses to the sawed-off billiard cue as a "billy" and the conclusion that it was concealed.
The question of concealment is a question of credibility, the State's witnesses testifying that it was found under the seat and the defendant that it was in full view. The facts *471 concerning the alleged concealment are singularly like the facts in State v. Rabatin, 25 N.J. Super. 24, 30 (App. Div. 1953).
On the question of the use of the expression "billy," N.J.S. 2A:151-41(b) reads:
"(b) Any instrument of the kinds known as a blackjack, slung shot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or any high explosive, other than fixed ammunition 
Is guilty of a misdemeanor." (Emphasis supplied.)
The statute plainly sought to prevent the carrying of concealed weapons of certain specified categories and thus to prevent their use for criminal purposes. It would be a most difficult, if not insurmountable, task to list in complete detail each of the perhaps dozens of terms variably used for the kinds of weapon generally denominated in the statute. The statute does not pretend to catalogue a comprehensive and exclusive glossary of all such terms. It merely lists under generic terms the most common designations of the kinds of weapons, the concealed carrying of which is intended to be prohibited. People v. Mulherin, 140 Cal. App. 212, 35 P.2d 174 (App. Dist. 1934).
Webster's Standard Dictionary (2d ed. 1943), defines "kind of" as "something belonging to the class of; something like to." Used in this sense, the word "billy" should be considered generic, and the statute should be construed to mean any instrument of the "class of" or "like to" those detailed.
Webster's Standard Dictionary, supra, defines "billy" as "A bludgeon; a club, esp. a policeman's club," and "bludgeon" as "A short stick, with one end loaded, or thicker and heavier than the other, used as an offensive weapon; hence, any clublike weapon." Counsel, at our request, has forwarded the alleged weapon for our inspection. It is apparent that the sawed-off billiard cue, which defendant admitted could not be used as a "pool cue" and which is narrower at one end and loaded or heavier at the other end, *472 is of the class of instrument known as a "billy." In length and shape it approximates a policeman's club. No explanation is given of the possible use thereof for any purpose other than as a weapon. Nor does any other possible use occur to us. Additionally, not only did the State's two witnesses refer to the cue as a "billy" but defendant's counsel and defendant himself referred to the instrument by that designation, quite plainly demonstrating their recognition that in common parlance "billy" is an apt denomination of the instrument here in question. Defendant has failed to demonstrate how he was prejudiced by the description of the cue as a "billy." There was no error in the use of the word "billy" and the conviction is not vulnerable on the point argued.

IV.
There was adequate competent testimony to support the verdict.
Affirmed.