PEOPLE *v.* GARDNER.

1. CRIMINAL LAW—APPEAL — QUESTIONS CONSIDERED—PRIOR DE-
   CISION—VALIDITY OF ORDINANCES.

   A decision of this court, sustaining the validity of a city ordi-
   nance and affirming the conviction of a respondent prose-
   cuted for its violation, must be regarded as settling the ques-
   tion whether the city may pass such an ordinance, when
   again called in question by the same person, on appeal from a
   subsequent conviction.

2. CONSTITUTIONAL LAW — VALIDITY OF STATUTES — MOTIVES OF
   LEGISLATURE—JUDICIAL INQUIRY.

   The motives of a legislature or of its members cannot be in-
   quired into for the purpose of determining the validity of its
   enactments.

3. MUNICIPAL CORPORATIONS—ORDINANCES — VALIDITY — MOTIVES
   OF COUNCIL.

   The motives of a city council in adopting an ordinance, in the
   exercise of its legislative powers, cannot be inquired into for
   the purpose of invalidating the ordinance, though fraud is
   alleged.

4. SAME—ORDINANCES—VIOLATION—PROSECUTION—EVIDENCE.

   On a prosecution for violation of a city ordinance regulating
   the collection and disposal of garbage, evidence that the or-
   dinance was not adopted in good faith for the protection of
   the public health, but for the purpose of creating a monopoly
   in the hands of the contractor, is not admissible.

5. SAME—JUSTIFICATION.

   It is no justification for the violation of a city ordinance that
   other violators are not convicted, or that those whose duty it
   is to perform the duties required by it have fallen short,
   through inattention or intentional omission or neglect.

6. SAME—DIRECTION OF VERDICT.

   On a prosecution for violating a valid city ordinance, where the
   facts are undisputed and the only question on which respond-
   ent desires the verdict of the jury involves the validity of the
   ordinance, the court properly directs a verdict of guilty.

7. CRIMINAL LAW—TRIAL—INSTRUCTIONS—DUTY OF JURY.

   Respondent in a criminal case has no right to an instruction that

the instructions of the court are merely advisory, and that the jurors have the right to disregard them and return such a verdict as they think is right.

Certiorari to recorder's court of Detroit; Murphy, J. Submitted October 6, 1905. (Docket No. 17.) Decided March 5, 1906.

James Gardner was convicted of violating a municipal ordinance relative to the disposition of garbage. Affirmed.

*Fred A. Baker*, for appellant.

*Timothy E. Tarsney* and *Corliss, Leete & Joslyn*, for the people.

HOOKER, J. The defendant has been convicted a second time of violating a garbage ordinance of the city of Detroit. He questions the conviction upon two grounds: *First*, that the ordinance is void; *second*, that the court erred in directing a verdict of guilty.

That a city may lawfully pass an ordinance like this must be considered settled by the decision in the case of *People* v. *Gardner*, 136 Mich. 693, where this identical ordinance was held valid, and a former conviction of this defendant was affirmed. See, also, *Fischer* v. *St. Louis*, 194 U. S. 361.

Upon a prosecution for a second offense, his counsel claimed the right to show by testimony that the ordinance was not passed in a bona fide attempt to conserve the public health, but to create a monopoly for the benefit of the Detroit Sanitary Works, a concern to which was granted the exclusive right to remove garbage from the city. The testimony offered was, in substance, that said company did not, and could not, with the teams and men actually employed, thoroughly do the work contracted, and that complaints made were not investigated or acted upon by the city authorities. That this was known to be inevitable by the council, when the ordinance was passed,

because the same conditions existed under one or more former contracts with the Detroit Sanitary Works.

Upon the trial of the former case, it was claimed that the ordinance was void because unreasonable, and therefore the question must have been passed upon. The only difference between that record and this, so far as they relate to this point, is that in the former case the opinion states that the facts were not in dispute, while upon the trial of this case counsel offered to show the facts before mentioned, and was not permitted to do so. As stated, we have held that the ordinance is valid upon its face, and, were it clear that the question is before us, we should not hesitate to say that there is nothing in the ordinance that is impracticable or unreasonable in itself.

The question of fraud: Counsel offered to produce testimony which he said would tend to show that the purpose of the council was fraudulent, and to create a monopoly of the garbage business in the hands of the contractor. We have alluded to the fact that, in passing ordinances, a common council acts under delegated authority, as an inferior legislative body. Nothing is better settled than the rule that the motives of a legislature or of the members cannot be inquired into, for the purpose of determining the validity of its laws. See *Doyle* v. *Insurance Co.*, 94 U. S. 535, and cases cited in McQuillin on Municipal Ordinances, § 161. That author says:

"The general rule is well established that courts will not inquire into the motives of legislators where they possess the power to do the act, and it has been exercised as prescribed by the organic law. In such case the doctrine is that the legislators are responsible alone to the people who elect them. And this principle is generally applied to purely legislative acts of municipal corporations. In passing an ordinance legislative in character, relating to the police power and importing no private contract or right, 'the members of the city council are entitled to the same privileges and prerogatives which belong to members of the State legislature.' Neither the motives of the members, nor the influences under which they acted, can

be shown to nullify an ordinance duly passed in legal form, within the scope of their corporate powers.

" ' The legality of the acts of legislative or of corporate bodies cannot be tested by the motives of the individual members, or the adventitious circumstances they may lay hold of to carry their measures, provided they proceed regularly and act within the scope of their powers. If they be regularly convened, if the purpose be lawful, and if their acts are passed in due form of law and within the scope of their authority, persons who lend their money on the faith of such acts, or do other lawful things in a just reliance upon their validity, cannot be affected by the secret springs of corporate action, and the public faith cannot be tarnished by the unseen influences surrounding it.' *Borough of Freeport* v. *Marks*, 59 Pa. 257."

The case of *Soon Hing* v. *Crowley*, 113 U. S. 703, 710, is in point, where, in considering a police ordinance, Mr. Justice Field, with the approval of his associates, said:

" The rule is general, with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile."

Mr. Dillon questions the application of this rule to cases involving municipal ordinances. 1 Dillon on Municipal Corporations (4th Ed.), § 311. He says:

" It is well settled that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws. Such an inquiry would not only be impracticable in most cases, but the assumption and exercise of such a power would result in subordinating the legislature to the courts. In an-

alogy to this rule it is doubtless true that the courts will not, in general, inquire into the motives of the council in passing ordinances. But it would be disastrous, as we think, to apply the analogy to its full extent. Municipal bodies, like the directories of private corporations, have too often shown themselves capable of using their powers fraudulently, for their own advantage or to the injury of others. We suppose it to be a sound proposition, that their acts, whether in the form of resolutions or ordinances, may be impeached for fraud at the instance of persons injured thereby."

It is noticeable that he supports the first proposition of his text by the citation of Cooley on Constitutional Limitations (7th Ed.), pp. 257, 258, where many cases are collected, but expresses the opinion that the acts of a council "may be impeached for fraud at the instance of persons injured thereby." No authority supporting this opinion is cited, except it be the case of *State* v. *Gaslight & Coke Co.*, 18 Ohio St. 262. That case recognizes the rule, and says:

"As the legislature is a co-ordinate branch of the government, the jurisdiction of the judiciary to declare its acts of legislation within its constitutional sphere invalid on account of the improper motives which induced their enactment may well be denied. And the same rule should, perhaps, govern in the case of an ordinance passed by a city council in the exercise of the legislative powers conferred upon it for the purposes of police regulation, or municipal government. But this immunity from impeachment for fraudulent motives, or abuse of power, does not attach to all the acts of a city council which may assume the form of an ordinance."

This distinction is sufficient to except the present case from the rule there applied, but the case has little support. The suggestion of Dillon has not received the approval of the courts or jurists of the country. Of the general subject Mr. Justice COOLEY says, in Constitutional Limitations (7th Ed.), p. 257:

"From what examination has been given to this subject, it appears that whether a statute is constitutional or

not is always a question of power—that is, a question whether the legislature in the particular case, in respect to the subject-matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions.   In any case in which this question is answered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised.   If evidence was required, it must be ' supposed that it was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding.   And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon.   The reasons are the same here as those which preclude an inquiry into the motives of the governor in the exercise of a discretion vested in him exclusively.   He is responsible for his acts in such a case, not to the courts, but to the people."

He has cited innumerable cases in support of the text, and, upon page 305, has distinctly applied the rule to municipal ordinances in the following language:

" And the same presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies, and of the State legislature, and will preclude, in the one case as in the other, all collateral attack."

The note in connection with the foregoing indicates that the Ohio case above cited was not overlooked.   From what has been said it should be inferred that the testimony offered was not proper for the purpose of showing fraudulent action by the council.

. The validity of the ordinance does not usually depend on a completely successful enforcement of its provisions, nor can one who violates it be discharged, merely because

it is shown that there are other violators who have not been convicted, or that those whose duty it is to perform the duties required by it have fallen short, through inattention or intentional omission or neglect.

We understand that the questions before us are two: (1) Had the defendant a right to have this proof go to the jury? (2) Should the court have directed a verdict of guilty? To the first the answer is in the negative.

Was it error for the judge to direct a verdict of guilty? Before the case was submitted to the jury, the court said:

" *The Court:* The facts in this case, as I see it, are not disputed.

" *Mr. Baker:* I claim they are.

" *The Court:* The facts which are in evidence are not disputed.

" *Mr. Baker:* I desire to go to the jury upon the question whether the Detroit Garbage Works performs this work. I will put it in this form: Upon the question whether the collection is equal to one-half of the city upon the minimum of service required by the contract. I want the verdict of the jury upon that question under the evidence.

" *The Court:* I do not think you are entitled to a special verdict in a criminal case. This being of the nature of a criminal case, are you entitled to anything other than a general ruling?

" *Mr. Baker:* No, they can't be compelled to render a special verdict; but they may render one; and, of course, although the verdict may be general, it will have reference to and be based upon the instructions of the court. And a general verdict would be an answer—although it is a verdict of guilty or not guilty—it would be an answer to the question that the court ought to leave to the jury. And, upon the evidence that I have introduced here, I have a right to go to the jury, and to take their view of the evidence—their judgment upon the evidence whether this contract is being performed or not. And my proposition to the court is: Under the evidence in this case they do not do half this city, at the minimum amount of service required by the contract. I have the figures in here that show it. You can assume that to be the fact or take the opinion of the jury upon it.

" *The Court:* What are the conceded facts with

reference to the alleged violation of the ordinance, by the respondent?

"*Mr. Baker:* There is no disputing the fact that we carry garbage through the streets, and we are not the contractor.

"*Mr. Corliss:* You are not authorized by the city so to do.

"*Mr. Baker:* No, sir, we are not authorized by the city; don't claim any such authority.

"*The Court:* I take it that these facts are conceded: That in pursuance of its power the city entered into a contract with the Detroit Sanitary Works, assuming to give the sanitary works exclusive right to collect and remove garbage within and from the city; after that contract had been executed, this defendant, upon the day named in the complaint, did collect and transport through the streets of the city such stuff as is, within the purview of the ordinance, garbage. And, at that time, he was not a contractor authorized so to do.

"*Mr. Baker:* There is no question about that. Our dispute relates to the validity of the ordinance and the contract. And, under the evidence, I claim the right to take the opinion of the jury upon any controversy that may arise in regard to the evidence.

"*The Court:* If there be a question of fact for the jury.

"*Mr. Baker:* And also, upon this question I desire to take the opinion of the jury, under the evidence in this case: Whether the contract was entered into in good faith on the part of the common council of this city, to protect the public health? I claim that it was not.

"*The Court:* Upon these questions you claim the right to go to the jury: First, upon the question whether or not the company is performing the work called for by the contract; and, secondly, as to the good faith of the common council in contracting for this work?

"*Mr. Baker:* Yes—that is, to take their opinion upon the question whether it is a good faith contract, or whether it is a mere cloak or pretext to give the garbage works— the sanitary works, this garbage. I think, under the evidence, upon those questions, I have a right to go to the jury.

"*The Court:* I do not think so, Mr. Baker; and that being my view, I will state it to the jury, and then you may take an exception.

"*Mr. Baker:* I put it in that form, if the court please,

so as to make up a record; but I expected that your honor would rule against me. But I take an exception just the same. I also desire to address the jury upon this question: Whether or not they are bound to take the instructions of the court.

" *The Court:* Isn't that settled in this same case?

" *Mr. Baker:* No, not in the form in which I want to see it.

" *The Court:* What new phase is there as to that?

" *Mr. Baker:* I will ask your honor to instruct the jury that your advice in this case is merely advisory; that it is within the power of the jury to disregard your instructions, and to render such verdict as they think is right upon their honor and their consciences. I would like to have the jury instructed that if any one of them should refuse the court's instructions, that there is no power, under our law in the court or elsewhere, to punish them for contempt of court. * * * And I ask your honor to instruct them that your instructions are merely advisory; that they cannot be compelled to render a verdict in accordance with your instructions; that it is a matter of honor, and conscience, and judgment upon their part; and that, if they disregard the instructions, there is no power to subject them to any punishment whatever for their verdict. * * *

" *The Court:* I haven't passed upon it yet. I ask you, I say; do you concede the law in this State now is not as you claim it to be, under the decision given in this very case?

" *Mr. Baker:* I do not concede it. The court has said that the trial judge may direct a verdict; but they have not said that the jury are bound by it; or that they can be punished if they do not obey it. They have not said that. That is what I want to argue the question upon.

" *The Court:* Well, gentlemen of the jury, by far the most important question suggested in this case is the one just referred to by Mr. Baker. He asks that the court say to you that any instructions upon the law of this case now given you are not obligatory upon you, but are simply advisory. In a case that is strictly a criminal case, of course that is not the law, never was the law, never will be the law. In a case which is strictly criminal in character, where there is a prosecution for the commission of an alleged crime, the instructions given by the court are as binding upon the jury, under the oath, as any obligation they can take. The case at bar, upon which you are

now sitting, is not strictly a criminal case. It is a case brought for the violation of the city ordinance. A city ordinance is not a law of the same character as a statute. It is merely a regulation; a rule of conduct passed by the common council for the direction and supervision of its citizens. But, while it is not criminal in character, it partakes in its nature of the character of a criminal case. Because of the difference between a prosecution brought under an ordinance, and a prosecution brought under a statute, it was urged upon the trial of this respondent in a former case, under this same ordinance, that the court could not do more than advise the jury what the law is; that he had no right to say the law is so and so, and it becomes your duty to take the law as such. When that question was presented to me before, I took the view that in a case of this kind, no less than in a strictly criminal case, the functions of the court and the jury are separate and distinct; the court being permitted to act within its sphere, and the jury being permitted to act within their sphere; the jury being the sole judges of the fact, and the court being the sole judge of the law. And my view upon that was upheld by the Supreme Court in the case taken there upon a conviction rendered here against this respondent. I take it that this is the law. And that being my view, I say to you that in this case it is your obligation, under your oaths, to take the law as it is given you by the court, and to follow implicitly and scrupulously. If a juror refuses to take the law from the court, another situation arises. I am not prepared to say what the power of the court in that event would be. I have not given it sufficient study to say. The general doctrine, of course, is, that when a duty is vested in a court—when power is given to a court, there goes with the power all the implied authority to make that power effectual. Otherwise, of course, the power of the court might be nullified. If the legislature of the State vested a certain authority or jurisdiction in a court, or say to a court, you have not only the power, but the right and the duty to act in this manner, there necessarily is included within that jurisdiction authority to make its power effectual. But further than that I am not at this time prepared to say what redress a court would have if a jury or a juror should refuse to obey the instructions of the court.

"So much for that phase of the matter. I charge you, as a matter of law, that it is mandatory, obligatory upon

143 MICH.—8.

you to take the law in this case as the court declares it to be. Now, that being so, what is the issue here presented? The common council of this city has been authorized by the legislature to enter into an exclusive contract, if it so desires to, with anybody, for the collection and removal of garbage. In pursuance of the authority so conferred upon the council by the legislature, the common council of this city has passed an ordinance, under the terms of which a contract has been entered into with the Detroit Sanitary Works, giving to that company the exclusive right and duty of collecting and removing garbage within the city of Detroit. Now, that power of the council, gentlemen of the jury, to give an exclusive right to any individual or company or firm, is a lawful power. While it gives to the company an exclusive right, that exclusive right does not violate any other individual rights; or, if it does violate them, it is such a violation as is necessary for the common good. You will readily see at once, gentlemen of the jury, that if the collection of garbage and if the removal of garbage is necessary to preserve the health of the people of this city, such a system ought to be devised as will be effectual. And it is not going too far to say that in order to have an effectual removal of garbage, there must be some supervision over it. Now, the common council having the authority to give to one person the exclusive right to remove the garbage, if it sees fit to do so, and having exercised its discretion by saying that, in its judgment, the best way of collecting and removing garbage is to give that right to one person, it is not within your power, gentlemen of the jury, to sit in judgment of the common council, and say that their act in that regard was not a proper exercise of their discretion.

" We cannot substitute a jury, gentlemen, for the common council of the city of Detroit. And the Supreme Court of this State upheld this ordinance, and said the common council has the right to give that sole privilege to any one person if it seems best so to do. Now, that was done by the common council; and after that contract was let, this respondent collected garbage and removed it in violation of the terms of the ordinance. Whether this company is living up to its contract is not material to this case, gentlemen. If this company is not doing its duty under that contract, it does not furnish this respondent a right to violate the ordinance. Two wrongs never made a right; and the wrong of this company, if there is a

wrong, does not justify this defendant in doing wrong. So that on the question which was urged by Mr. Baker, that you ought to be permitted to say by your verdict whether or not the company is performing its contract, I say to you that you have no right to consider that, because it is not material to this case. It in no way justifies the defendant, if he be guilty of a violation of the ordinance, to say that the company is not doing what it contracted to do.

"As to the other phase of the matter, it has been urged that you had a right to say that the intent or purpose of the common council in entering into this contract was not a legitimate one. It has been said that the common council, in entering into this contract with this company, must have known that this company could not perform what it contracted to do. As to that, I say, gentlemen of the jury, that is entirely foreign to this case. There is a way of enforcing the performance of that contract. The city of Detroit is a party to it, upon the one hand, and the company is a party, upon the other hand. I take it that any citizen of the community may invoke the operation of the law to enforce the full performance of that contract. Even if that cannot be done, there are other ways in which the company can be compelled legally and properly to carry out what it has contracted to do.

"In any event, you have no right, as I view it, to sit in judgment upon the intent of the common council of this city in the performance of purely legislative act, which they did in a case of which they had undoubted jurisdiction.

"That being my view upon the law, gentlemen of the jury, I say to you that there is no question of fact for you to consider in this case. It is conceded that the respondent violated the terms of the ordinance. The ordinance is a valid one, and I, therefore, say to you, gentlemen of the jury, that it becomes your duty to return a verdict of guilty as charged."

The foregoing dialogue shows that the violation of the terms of the ordinance was admitted, and that the only questions upon which a verdict was sought by the defendant were those bearing upon the validity of the ordinance. In such a case it has been held that the court may properly direct a verdict of guilty, even in a criminal case.

We are cited to the case of *People* v. *Remus*, 135 Mich. 629, upon the point that this was error. It is deducible from the opinion in that case that the court assumed to decide as a fact a question that was not admitted, or even conclusively proved; the jury having the right to disbelieve certain testimony. That case shows that we have decided that admitted facts would authorize the direction of a verdict. *People* v. *Richmond*, 59 Mich. 570; *People* v. *Kirsch*, 67 Mich. 539; *People* v. *Neumann*, 85 Mich. 98; *People* v. *Repke*, 103 Mich. 459; *People* v. *Hawkins*, 106 Mich. 488. While this is true, the case of *People* v. *Collison*, 85 Mich. 105, may appear at first blush to give support to defendant's claim that the jury should be instructed that the judge's opinion and instructions regarding the law may be disregarded. In that case it was held that, although the judge might lawfully have directed a verdict of guilty, directing the clerk, in the presence of the jury, to enter such a verdict was error. Technically the defendant should have had the verdict rendered by the jury. The following language is now relied upon to support counsel's claim that the defendant had the right to have the jury told that they might disobey the instructions of the court if they should choose to do so:

"In the case of *People* v. *Neumann*, 85 Mich. 98, and in the several cases therein referred to in support of the conclusion arrived at there, the jury acquiesced in the direction of the court; but here the court gave the jury no opportunity to follow, or to refuse to follow, the court's direction; in fact, there was no direction to the jury, but one to the clerk to enter a verdict."

We understand that this is not what was meant, which was merely to strictly enforce a technical right; to have the verdict rendered by the jury. It has been held in many cases that the jury is to receive the law from the court, and that it is the duty of the jurors to follow instructions in that regard. See *Hamilton* v. *People*, 29 Mich. 175; *People* v. *Mortimer*, 48 Mich. 37; *People* v.

*Hawkins*, supra; *State* v. *Burpee*, 65 Vt. 1 (19 L. R. A. 145). It would be anomalous, in the light of these decisions, to put a premium upon disregard of duty, by emphasizing the physical power of the jurors to disregard the law and their clear and well-settled duty.

It is suggested that the facts were not admitted, i. e., that the existence of a valid contract for the collection of garbage was not admitted. The contract was in writing, and was not questioned, except as the ordinance was questioned, and these questions have been discussed.

The judgment is affirmed.

CARPENTER, C. J., and GRANT, MONTGOMERY, and MOORE, JJ., concurred.