SHAW, P. J.
This case, like People v. Garcia, 1 Cal. App. (Supp.) (2d) 761 [32 Pac. (2d) 445, 2 Cal. Supp. 122], and People v. Arthur, 1 Cal. App. (Supp.) (2d) 768 [32 Pac. (2d) 1002, 2 Cal. Supp. 127], recently decided by us, arises under the State Pharmacy Act (Stats. 1905, p. 535), as amended in 1933 (Stats. 1933, p. 2192). The complaint here contains three counts, each charging that *753 the defendant permitted the sale of “drugs and medicines, to-wit, aspirin”, by an unregistered person, at a store or shop of which defendant “was the manager”.
Attack is made on the complaint because it does not allege that defendant was the proprietor of the store where the sale occurred. The same point was considered in People v. Arthur, supra, where we upheld the complaint on the ground that the manager of a store can be properly charged with violating section 12 of the act, which makes it unlawful for any person to permit the sale of drugs and medicines “in his or her store” by unregistered persons. We are satisfied with that decision and adhere to it.
The article sold here was aspirin. This is a drug or medicine and its sale is covered by the Pharmacy Act. (People v. Garcia, supra.) Defendant contends that the aspirin sold in this case was shown by the evidence to be a proprietary medicine and therefore excepted from the act by section 12. The question, what evidence is necessary to show that a medicine is proprietary was not decided in People v. Garcia, but its solution is required by the record here. The provision of section 12 of the act on which defendant relies reads as follows: “Nor does this act apply to registered, trade-marked or copyrighted proprietary medicine, registered in the United States Patent Office, but does apply to the sale by or through any mechanical device, of drugs, medicines and proprietary medicines registered or trademarked in the United States Patent Office. Nor does this act apply to the sale of proprietary medicines, when manufactured under the supervision of a registered pharmacist in the State of California, for which trade-marks may have been filed with the Secretary of State of California, by merchants possessing a license issued by the Board of Pharmacy as described in section 16 of this act.” The last sentence of this quotation is important here only because it indicates that the words accompanying the term “proprietary medicine” in the sentence first quoted were not intended to define that term, but to impose additional limitations on the articles described by the exception. To bring an article .within the exception stated by this first sentence, two things are necessary: (1) it must be a proprietary medicine, and (2) it must be “registered, trade-marked or copyrighted . . . registered in the United States Patent Office”.
*754 The term “proprietary medicine” has received considerable attention from the courts. Its first appearance in a statutory provision seems to have been in the United States revenue laws. The case of Ferguson v. Arthur, 117 U. S. 482, 488 [6 Sup. Ct. 861, 29 L. Ed. 979], involved a tariff on imported medicinal preparations “recommended to the public as proprietary medicines or prepared according to some private formula or secret art as remedies or specifics for any disease” and related to a preparation designated by its manufacturers as “Henry’s Calcined Magnesia”. These words were blown in the bottle and printed on a label which also named the manufacturer, referred to the contents as “their calcined magnesia” and stated that certain named persons were the sole agents for its sale. Accompanying the bottle was a circular which extolled the medicinal virtues of the product and stated it was made by an improved process of manufacture. The court held that this preparation was dutiable under the statute, although it appeared that calcined magnesia was a well-known medicinal preparation which in its ordinary form sold for much less than Henry’s, saying “we cannot doubt that this was an article recommended to the public as a proprietary medicine, within the statute. It may fall within that clause, without being prepared according to some private formula or secret art, as a remedy for disease. The statute is in the alternative . . . It was undoubtedly to reach just such medicinal preparations as this—the monopoly of a particular person, commanding a price due to a special mode of manufacture, sold in bottles, having a name attached identifying the manufacturer as the proprietor of all that imparted the special merit and produced the special price—that the special revenue tax was laid.” The court also quoted the dictionary definitions of proprietary as “belonging to ownership” or “belonging, or pertaining, to a proprietor”, “relating to a certain owner or proprietor”. There are several cases in the lower federal courts following this case, one of which goes so far as to hold that labeling plasters as “Johnson’s Belladonna Plasters” amounted to a holding out to the public that they were proprietary, because “Johnson’s” plasters necessarily belong to Johnson. (Johnson v. Herold, 161 Fed. 593, 605.) The rulings in all of these cases are distinguishable here on the ground that the statute to which they related required *755 only that the preparation be recommended or held out as a proprietary medicine, and their effect is merely that the manufacturer does this if he claims them as proprietary, whether his claim be true or not. Here, under the Pharmacy Act, we are not concerned with the manufacturer’s claims, but with the question whether the medicine is proprietary in fact. However, the language we have quoted from Ferguson v. Arthur, supra, clearly implies that to be proprietary a medicinal preparation must be á monopoly, that is, some person must have the exclusive right to its manufacture, but this may be true even though the article is similar to those made by others, if it has a special merit by reason of' some special and exclusive mode of manufacture of which the manufacturer is the owner. The definition of proprietary medicine in this case has been referred to with approval in cases dealing with pharmacy statutes which contain provisions excepting proprietary medicines from their operation. (State v. F. W. Woolworth Co., 184 Minn. 51, 54 [237 N. W. 817, 818, 76 A. L. R. 1202]; Tiedje v. Haney, 184 Minn. 569, 575 [239 N. W. 611, 613]; State v. Jewett Market Co., 209 Iowa, 567, 570 [228 N. W. 288, 289].) . In State v. F. W. Woolworth Co. the court referred to the facts that the preparation sold bore no distinctive name, was labeled as a U. S. P. preparation and came within the U. S. P. formula, as showing that it was not a proprietary medicine, although there was testimony that it was of superior quality and made by a special secret process. In Tiedje v. Haney the court said that a medicine cannot be considered as proprietary unless the manufacturer’s name is on the package containing it. In McHenry v. Royal Neighbors, 211 Mo. App. 230, 236 [242 S. W. 147], where it was claimed that an applicant for life insurance had falsely answered a question as to his use of proprietary medicines, the court quoted with approval a definition of proprietary articles as “manufactured articles which some persons have an exclusive right to make and sell”. In Riggs v. Hot Springs, 181 Ark. 377, 381 [26 S. W. (2d) 70, 72], the court was considering an ordinance imposing a license tax on manufacturers of patent medicines, and declared that where a medicine “is prepared from a secret formula, and is placed in containers . . . for sale to be used without further preparation, and is labelled so that it may be for immediate use, it is a matter of common knowledge *756 that such remedies are called ‘patent’ or ‘proprietary’ medicines”.
From all these authorities and the usual meaning of the words, we conclude that a proprietary medicine is one which the maker has the exclusive right to manufacture and which is labeled or otherwise marked with his name. This does not mean that the composition of the medicine itself must be patented, but it must either be made by a secret formula or the maker must “have some exclusive process of manufacture by which exceptional virtues are imparted to his product as distinguished from other preparations of the same sort.
In State v. Jewett Market Co., 209 Iowa, 567 [228 N. W. 288], and State v. Zotalis, 172 Minn. 132 [214 N. W. 766], it was held, apparently with scant, if any, consideration of the evidence, that aspirin is not a proprietary medicine, under pharmacy statutes containing exceptions similar to that we are considering. But we regard the question as one of an evidentiary nature, requiring for its solution more than a mere statement of the name or chemical composition of the substance.
Here the testimony showed that “Bayer’s Aspirin” and “St. Joseph’s Pure Aspirin Tablets” were sold; that the former had been advertised and sold to the public for “many years”, and the latter for “several years”. A witness stated that different manufacturers differed in the method of manufacture and the percentage of other ingredients which go to make up the tablet. The boxes of tablets sold were also introduced in evidence. On the tablets of
B
a
Bayer manufacture was stamped the mark “Bayer”; on the
e
r
boxes containing them was printed “Bayer-tablets of Aspirin Genuine”, with directions for use, a reproduction of the marks on the tablets and the statement “Aspirin is the trademark of Bayers manufacture of Monoacetieacidester of Salicylic acid. Made in U. S. A. The Bayer Company, Inc., 170 Yariek St., N. Y.” Inside of each box was a leaflet containing directions for use, a representation of the box top and of the marks on the tablets, and the words “Bayer tablets and capsules of aspirin. Look for the Bayer cross. *757 Unless you see the name Bayer on tablets you are not getting the genuine Bayer product prescribed by physicians since 1899.” On the St. Joseph’s aspirin tablets was stamped the word “Aspirin”. On the box was printed “St. Joseph’s Genuine Pure Aspirin St. Joseph Company New York-Memphis” and inside was a leaflet containing “Directions St. Joseph’s Pure Aspirin.”
All this falls short of a showing that the aspirin sold was a proprietary medicine within the meaning which we have placed upon that term, even if we accept the statements on the boxes and leaflets as true. But those statements were introduced merely to show the articles sold, and cannot be regarded as proof of the facts stated, being, for that purpose, purely hearsay. Such statements had a different standing in Ferguson v. Arthur, supra, because there the question was merely whether the medicine was held out as a proprietary medicine, not whether it actually was one. The labels here are of interest only to the extent that they show that the maker’s name was on the product sold.
The defendant sought to introduce evidence of certain trademarks pertaining to the brands of aspirin sold, and this evidence was excluded on his statement that he had no further showing to make regarding the proprietary character of these articles than that which we have above stated. While the two provisions of section 12 regarding the proprietary and the trade-marked aspects of the medicines excepted from the operation of the act are independent, so that proof of either might be offered without first producing the other as a foundation, yet both must be proved to show an exception. The burden of proof in this matter was on defendant, and in view of the fact that there was not evidence sufficient to show that the medicines in question were proprietary, no harm could have been done by the exclusion of evidence as to their trade-marked character.
In each count it is charged that defendant permitted the sale of drugs and medicines by a person “not a registered pharmacist or assistant registered pharmacist”. The prosecution produced no evidence to show that this person was not a registered pharmacist or assistant pharmacist, and the defendant offered no evidence upon the subject. The defendant now contends that the burden of proving the fact in this matter was upon the prosecution, although he *758 concedes that if the question had been as to his own personal status, the burden would have been upon him to show that he was registered. The rule on this subject is thus stated in 16 Corpus Juris, 530: “Where the subject-matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him.” A similar statement is found in 8 California Jurisprudence, 30, and this rule has been approved in many California eases, some of which are: People v. Boo Doo Hong, 122 Cal. 606 [55 Pac. 402]; People v. Quarez, 196 Cal. 404, 409 [238 Pac. 363]; People v. Osaki, 209 Cal. 169, 191 [286 Pac. 1025]; People v. T. Wah Hing, 47 Cal. App. 327, 331 . [190 Pac. 662]; People v. Ross, 60 Cal. App. 163, 167 [212 Pac. 62]; People v. Moronati, 70 Cal. App. 17, 22 [232 Pac. 991]; People v. Velasquez, 70 Cal. App. 362, 367 [233 Pac. 359]. In all of the California cases which we have examined the question related to the personal status of the defendant, but the rule is not limited to such matters. It extends to all matters peculiarly within his knowledge. In People v. Nedrow, 16 Ill. App. 192, 196, this rule was applied to a case where the charge was that the defendant, not being or having in his employ a registered pharmacist, kept a pharmacy in violation of the Illinois Pharmacy Law, the court saying: “If the defendant was a registered pharmacist, or employed, and placed in charge of his pharmacy or store, a registered pharmacist, it was a matter peculiarly within his knowledge and could have been very easily proved by him by the production of the certificate of registration which the law required him to obtain before he could retail, compound, or dispense drugs, medicines or poisons. Not having produced such a certificate, the averment of the complaint, of the defendant not being, or having in his employ, a registered pharmacist, is taken as true.”
The provisions of our pharmacy law show that this rule should be applied here. It provides for the examination and registration of pharmacists and assistant pharmacists by the state board of pharmacy and for the issuance of certificates of such registration to the persons found qualified, which must be annually renewed. The secretary of the board is *759 required to keep a book in which shall be entered a record of all persons registered under the act. Section 10 of the act requires that “every person upon receiving a certificate of registration under this act, or who has heretofore received a certificate of registration in this state, shall keep his last receipt for reregistration, conspicuously exposed in his place of business”. In section 17 there is a provision that “it shall be the duty of the owner or manager of any drug store or other store retailing drugs, medicines, or poisons when called upon by an officer, or by a member of the Board of Pharmacy, or a duly authorized inspector, to furnish said officer, member of the Board of Pharmacy, or duly authorized inspector with the names of the owner or owners or manager or managers and employees together. with a brief statement of the capacity in which said persons are employed in said stores”. In view of these provisions of the law, it is clear that if any of defendant’s employees are registered, the fact must be peculiarly within his knowledge. Their certificates of registration are always before him in his store, so that he can easily ascertain all data necessary to make proof of their registration. "While the prosecution might also learn and prove the fact by means of the record of the state board, yet its burden would be greater because of the necessity of making a complete search of the records of the board to establish the nonexistence of the registration. Moreover, the same situation as to defendant’s own registration does not prevent the application of the rule to him, as pointed out in People v. Velasquez, supra.
The judgment and order appealed from are affirmed.
Pox, J., concurred.